The plaintiff, Elmer Quillen, appeals from a judgment granting a directed verdict in favor of the defendant, Lois Quillen. We affirm.
The facts of this case are based upon an incident which took place in September of 1977 when the plaintiff and his brothers, Lois Quillan and Mason Quillen, were installing a television antenna on the roof of the defendant's home. On September 2, 1977, the defendant visited the plaintiff at his home and asked him if he would assist him the following day in erecting an antenna. The plaintiff acceded to his brother's request and agreed to ask Mason Quillen to bring a ladder and help with the installation.
The plaintiff arrived at the defendant's home early the next morning and immediately began cutting and assembling the various parts of the antenna pole. Sometime later, Mason Quillen arrived with an aluminum extension ladder. That ladder was placed against the overhang of the house and rested upon a metal gutter.
When the plaintiff completed the assembly of the antenna pole, the pole was erected and positioned against the side of the house where it could be raised to the roof for fastening. At that time, the plaintiff climbed the ladder to the roof and attached wires to a booster on the antenna, a skill he had acquired while in the business of television installation and repair. After completing that work, the plaintiff proceeded to come down from the roof, turning back and stepping on the ladder with his left foot. When he placed all of his weight on the ladder, the ladder slipped out from under him, causing him to fall some twelve or thirteen feet to the ground. As a result of the fall, plaintiff suffered a severe fracture of the left arm, a dislocated left elbow, six fractured ribs, a punctured lung and a fractured collar bone. He incurred medical expenses in excess of $16,000.00.
On May 28, 1978, the plaintiff filed a complaint seeking $65,000 in damages for injuries proximately caused by the defendant's negligence in allowing a ladder to be placed on his property in such a way as to injure the plaintiff. The case proceeded to trial before a jury; however, at the close of the plaintiff's evidence, the trial court granted the defendant's motion for a directed verdict.
On appeal, the plaintiff argues that the trial court committed reversible error in granting a directed verdict, because a jury question was presented as to whether the defendant exercised the degree of care required under the circumstances. It is the plaintiff's contention that the defendant should have taken additional precautions to insure the stability of the ladder.
In responding to these arguments, we recognize that Rule 50 (e), ARCP, expressly provides that the scintilla evidence rule is the standard by which a trial judge is to determine the propriety of granting a motion for directed verdict. As a result, issues and questions in civil cases must be submitted to the jury if the evidence, or any reasonable inference therefrom, produces the merest gleam, glimmer or spark in support of the theory of the complaint. Turner v. Peoples Bankof Pell City, 378 So.2d 706 (Ala. 1979); Western Ry. of Alabamav. Still, 352 So.2d 1092 (Ala. 1977). In cases involving questions of actionable negligence, this standard has often been translated to read as follows: *Page 988 
 [W]here from the facts shown by the evidence, although undisputed, reasonable men might draw different conclusions as to negligence or contributory negligence, such questions are for the jury, and it is only when the facts are such that all reasonable men must draw the same conclusion that negligence or contributory negligence is ever a question of law for the Court. White Swan Laundry Co. v. Wehrhan, 202 Ala. 87, 79 So. 479, Tennessee Mill Feed Co. v. Giles, 211 Ala. 44, 99 So. 84; Callaway v. Moseley, 131 F.2d 414 (Ala. C.C.A.); Reaves v. Maybank, 193 Ala. 614, 69 So. 137. In other words, where not only the facts constituting the conduct of the parties, but also the standard of care which they should have exercised, are to be determined the case is entirely one of fact to be decided by the jury. When the proof discloses such a state of facts, whether controverted or not, that, in essaying to fix responsibility for the injury or damage, different minds may arrive reasonably at different conclusions or may disagree reasonably as to the inferences to be drawn from the facts, the right of a party in a negligence action to have a jury pass upon the question of liability becomes absolute. Drew v. Western Steel Car Mfg. Co., 172 Ala. 616, 56 So. 995, 40 L.R.A., N.S., 890.
Patterson v. Seibenhener, 273 Ala. 204, 206-207, 137 So.2d 758,760 (1962). When a trial court in a negligence case is confronted with a motion for directed verdict it must apply this standard, and, in doing so, must view the evidence in a light most favorable to the party opposing the motion. If any reasonable inference drawn from the evidence proves to be adverse to the moving party, a motion for directed verdict is due to be denied. Turner v. Peoples Bank of Pell City,378 So.2d 706 (Ala. 1979). Alford v. City of Gadsden,349 So.2d 1132 (Ala. 1977). These principles are applicable to the present case and govern our decision in determining the propriety of the trial court's decision.
It is well settled that in every action grounded upon negligence there are three essential elements to a right of recovery. First, a duty owed by the defendant to the plaintiff; second, a breach of that duty; and third, an injury proximately caused by the breach. Elba Wood Products, Inc. v. Brackin,356 So.2d 119 (Ala. 1978). There is no question that in the present case the defendant, as a landowner, owed a duty of care to one coming upon his property by express invitation; however, the extent of that duty is necessarily dependent upon the plaintiff's "status" on the defendant's property. Was he a licensee, invitee or trespasser?
We hold that, on the day of the accident, the plaintiff was an invitee on his brother's property. This determination is based, in part, upon the fact that the defendant extended to the plaintiff an express invitation to come upon his property to assist him in a specific work; however, as this Court held in Autry v. Roebuck Park Baptist Church, 285 Ala. 76,229 So.2d 469 (1969), an invitation to come upon another's property, whether it be express or implied, does not, in itself, make one who accepts the invitation an invitee in the legal sense. See also 65 C.J.S. Negligence § 63 (41) (1966). In Autry, the Court quoted as authority the following language from McCulty v.Hurley, 97 So.2d 185 (Fla. 1957):
 In order for such relationship [invitor-invitee] to arise the person entering onto the premises, i.e. the invitee, must have done so for purposes which would have benefited the owner or occupant of the premises, i.e. the invitor, or have been of mutual benefit to the invitee and the invitor. And as we view it this benefit must be of a material or commercial rather than of a spiritual, religious, or social nature. This same reasoning is followed in our cases which hold persons invited into one's home as social quests to be licensees rather than invitees even though they are expressly invited to enter the premises of the host. Goldberg v. Straus, supra.
Thus, acquiring the status of an invitee depends upon the nature of the visit which brings a visitor on the premises rather than *Page 989 
the acts of the owner which precede the visitor's coming.Nelson v. Gatlin, 288 Ala. 151, 258 So.2d 730 (1972). The nature of the visit must bestow a material or commercial benefit upon the invitor.
It is clear in the present case that the defendant derived a material benefit in having his brother assist him in erecting the antenna. As was noted previously, the plaintiff had at one time been engaged in the business of television installation and repair and had acquired special skills in performing the work here under consideration. The assistance he rendered was, therefore, quite valuable to the defendant. Consequently the jury could have found that the defendant should have exercised that duty of care mandated by an invitor-invitee relationship.
In the definitive case of Lamson Sessions Bolt Co. v.McCarty, 234 Ala. 60, 173 So. 388 (1937), this Court discussed at length the duty owed by a landowner to an invitee. At234 Ala. 63, 173 So. 391, the Court held:
 This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron R.R. Co., 143 Ala. 299, 39 So. 301.
 This rule . . . includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.
Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court inLamson Sessions Bolt Co., supra, at 234 Ala. 63, 173 So. 391:
 In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."
Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209
(1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412
(1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384
(Ala. 1979); Tice v. Tice, 361 So.2d 1051 (Ala. 1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable.
We are of the opinion that an aluminum ladder leaning against a metal gutter constituted an open and obvious danger on the defendant's property which the plaintiff, in the exercise of reasonable care, should have recognized. There was no defect in the ladder, and its placement and position on the premises were as obvious to the plaintiff as they were to the defendant. The defendant, therefore, cannot be held liable for injuries suffered by the plaintiff when the ladder fell.
The judgment of the circuit court is therefore affirmed.
AFFIRMED.
MADDOX, FAULKNER, ALMON and EMBRY, JJ., concur.
JONES, J., concurs in the result. *Page 990