553 So.2d 545 (1989)
Effie BOGUE
v.
R & M GROCERY.
87-1575.
Supreme Court of Alabama.
September 15, 1989.
As Modified on Denial of Rehearing November 9, 1989.
Stan Brobston, Bessemer, for appellant.
W.J. McDaniel and Robert S.W. Given of McDaniel, Hall, Conerly & Lusk, Birmingham, for appellee.
PER CURIAM.
This is an appeal from a summary judgment entered in favor of the defendant, R & M Grocery. The plaintiff, Effie Bogue, was injured in a slip and fall accident upon the defendant's premises.
On February 3, 1986, Effie Bogue entered the R & M Grocery to purchase a pack of cigarettes and to cash her husband's retirement check. After being told by the clerk that she must produce identification before she could cash her husband's check, she proceeded out the door through which she had entered the grocery store, and fell, causing injury to herself.
Bogue sued R & M Grocery, alleging that it had negligently failed to maintain its premises in a safe condition for the use of the grocery's invitees. Specifically, Bogue asserted that her fall was caused by a significant drop in elevation from the doorway to the parking lot.
*546 In its answer, R & M Grocery denied the allegations of the complaint and alleged that Bogue's own negligence caused or contributed to her fall. R & M Grocery later moved for summary judgment based on the pleadings and on Bogue's deposition.
In opposition to the defendant's motion for summary judgment, Bogue presented the affidavit of Dr. James V. Walters, a civil engineer. Walters's affidavit stated, in part, as follows:
"Upon my investigation I saw, just outside the doorway of the said R & M Grocery, a concrete structure which sloped from the floor at said doorway to the asphalt near the gas pump area. Said concrete structure extended from the building approximately 11 inches and had a sloping descent from a vertical height of approximately 4 inches at the doorway at the approximate rate of 1 inch vertically for every 2.82 inches horizontally.
"[Further], I noticed at the exit, an inside wooden door which opens inside and swings from the patron's left to the right when exiting. There is an outside door constructed of a metal frame. The upper half of which is glass and the lower half metal. There are approximately 5 evenly spaced metal bars that run the length of said door, vertically. Said door is also depicted in the attached pictures, and opens out from the patron's left to right. At that point, the patron encounters the concrete structure at his or her feet. From the outside wall at the doorway to the nearest curb of the gasoline pump island, is a distance of 13 feet, plus or minus a half an inch. Cars access the gasoline pumps on either side of the island and pull between the building, where the aforesaid doorway is located and the pump island. The structure is built in such a way that a patron exiting said grocery would naturally be distracted from where he or she was walking in his or her need to look for traffic entering and exiting [at] the gasoline pumps.
"It is my opinion that the concrete structure which is maintained at the foot of the outside doorway to said R & M Grocery is neither a step nor a ramp as defined by the several building codes and requirements, including the Southern Building Code, and is not constructed or maintained in conformance with any known standard in the construction industry. Said structure constitutes a defect in the condition of the premises and said structure poses a hazard to patrons entering and exiting said R & M Grocery in that it provides for unsure footing. Further, the hazard is compounded in that the design of the store is such that patrons exiting R & M Grocery must direct their attention to traffic which may be entering or exiting the gasoline pump area. It is my opinion that the structure[,] considering its positioning in relation to the gas pumps[,] is a hazardous pitfall."
The trial court entered a summary judgment for R & M Grocery and made it final under Rule 54(b), Ala.R.Civ.P. Bogue appeals, and we reverse.
This action was commenced before June 11, 1987; therefore, the applicable standard of review is the "scintilla rule." See § 12-21-12, Ala.Code 1975.
"Rule 56, Ala.R.Civ.P., sets forth the two-tier standard for granting summary judgment. That rule requires the trial court to determine: 1) that there is no genuine issue of material fact, and 2) that the moving party is entitled to a judgment as a matter of law. This rule must be read in conjunction with the scintilla rule, so that summary judgment will not be granted if there is a scintilla of evidence supporting the argument of the non moving party. Silk v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 437 So.2d 112, 114 (Ala.1983). On appeal from a summary judgment, we must evaluate the evidence presented to the trial court and ascertain for ourselves, in light of the scintilla rule, whether there were any factual questions due to be decided by the jury. Kemp Motor Sales, Inc. v. Lawrenz, 505 So.2d 377, 378-79 (Ala.1987)."
Tribble v. Provident Life & Accident Ins. Co., 534 So.2d 1096, 1097 (Ala.1988).
*547 Bogue was a business invitee upon the grocery store's premises at the time of her accident, and as such, was owed a duty by the grocery to exercise reasonable care in maintaining the premises in a reasonably safe condition. This Court has written:
"It should be noted, however, that
"`the owner of the premises in such cases is not the insurer of the safety of his invitees and res ipsa loquitur is not applicable. Neither is there any presumption of negligence arising out of the mere fact of injury to the invitee.'

"Shaw v. City of Lipscomb, 380 So.2d 812, 814 (Ala.1980)."
Massey v. Allied Products Co., 523 So.2d 397, 398 (Ala.1988).
"In the definitive case of Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937), this Court discussed at length the duty owed by a landowner to an invitee. At 234 Ala. 63, 173 So. 391, the Court held:
"`This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R.R. Co., 143 Ala. 299, 39 So. 301 [ (1905) ].'
"`This rule ... includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.'
"Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson & Sessions Bolt Co., supra, at 234 Ala. 63, 173 So. 391:
"`In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."'
"Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala.1979); Tice v. Tice, 361 So.2d 1051 (Ala.1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980). See also Perry v. Hancock Fabrics, Inc., 541 So.2d 521 (Ala.1989).
The plaintiff has established evidence from which a jury could find that a defect existed in the ramp or slanting structure at the door of the grocery store. The defendant contests the assertion that the configuration of the step or ramp constitutes a hazard, and also argues that if a defect existed the plaintiff's awareness of the defect eliminates any liability on the part of the defendant, as a matter of law. We cannot agree. Once it has been determined that the duty owed to an invitee has been breached, questions of contributory negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury. This is such a case. There are any number *548 of factual issues for a jury in this case, as there usually are in negligence cases. As the Court noted in Foodtown Stores, Inc. v. Patterson, 282 Ala. 477, 213 So.2d 211 (1968):
"There are many factual matters that are involved in cases such as thisas examples: How old was the plaintiff? Her general health at the time of the accident? How much did she weigh? Was she wearing high or low heels? Was she under medication at the time that could have caused her to lose her equilibrium? Did she wear glasses? Bifocals? How long since they were changed or corrected? What was the condition of the floor as to color? Was it a slippery floor, or did it have a non-slippery surface? Countless other matters are important and usually present in such a case as this. All of such, however, are factual and for the jury to consider in each case, after proper instructions from the court."
282 Ala. at 482, 213 So.2d at 215-16.
Accordingly, we reverse the judgment of the trial court and remand.
REVERSED AND REMANDED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
I agree with the majority that Bogue presented evidence that there was a defect in the ramp; however, the majority overlooks the fact that the movant has shown that there is no evidence that the alleged defect in the ramp caused Bogue to fall.
It is readily apparent from a reading of Bogue's deposition that she had knowledge of the sloping entrance, which she now claims caused her to fall. Bogue made absolutely no assertion as to how or why she fell. She stated that there was no foreign substance on the floor that caused her to slip and fall. Nor did she claim that she was distracted by automobiles at the gasoline pumps or by anything else on the defendant's premises.
Bogue's deposition testimony, in pertinent part, was:
"Q. So then you had been to R & M Grocery before February 3 of '86?
"A. Yes.
"Q. To pick up items or whatever?
"A. Yes.
"* * * *
"Q. Describe the door step or the door entrance as you walk in as you remember.
"A. It has a slanting entrance.
"Q. When you say slanting entrance, is that like concrete going up to the door?
"A. Yes.
"Q. It had that slanting entrance ever since you have been going there?
"A. Yes.
"Q. And you would have seen that slanting entrance when you went in that morning, February 3 of '86?
"A. I saw it.
"* * * *
"Q. You never at any time saw anything spilled on the floor, a puddle of anything?
"A. What floor are you talking about?
"Q. Right as you walked out the door where you said you felt like you were roller skating. My question to you is
"A. No, I didn't see anything.
"Q. You didn't notice anything when you had walked in or when you pushed the door out to walk out before you fell, you didn't notice any puddles or anything there at the door?
"A. No, I did not.
"* * * *
"Q. Do you maintain that there is anything wrong with that door entrance there at R & M Grocery?
"A. The entrance slants.
"Q. That's that concrete going up that you have told me that you knew about, and I guess it is still there, how it slants, the concrete?
"A. Yes.
"Q. But you don't know if that made you fall or not?
"A. It probably had something to do with it.

*549 "Q. Well, then you do have some idea what made you fall? Or is it what you told me earlier, is you don't know, that you just fell?
"A. I just fell.
"Q. And you can't say here today exactly why you fell?
"A. That's right.
"Q. And the only thing you know about the door step is that it is slanted as you go up? There is some concrete, the door step is slanted?
"A. Yes.
"Q. And you stated that the day that this happened you don't remember seeing any puddles of anything or anything there on the floor?
"A. That's right."
In light of the fact that Bogue fully appreciated the alleged defect or hazard that she states might have caused her to fall, and based upon her statement that she did not know what caused her to fall, I would hold that there was no evidence from which a jury could find that there was a defect in the premises that proximately caused her to fall and sustain injury and that the trial court's entry of summary judgment was appropriate.
If Bogue cannot state that the alleged defect was the cause of her fall, how can a jury make that finding?
STEAGALL, J., concurs.

ON APPLICATION FOR REHEARING
PER CURIAM.
APPLICATION OVERRULED; OPINION MODIFIED.
HORNSBY, C.J., and JONES, ALMON, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.