555 So.2d 104 (1989)
Jack GRIDER and Alice Grider
v.
Rev. James Martin GRIDER.
88-760.
Supreme Court of Alabama.
December 1, 1989.
Bryan G. Duhé, Mobile, for appellants.
Charles J. Potts of Barker, Janecky & Copeland, Mobile, for appellee.
ADAMS, Justice.
This is an appeal by the plaintiffs, Jack and Alice Grider, from a summary judgment in favor of the defendant, Rev. James Martin Grider. We affirm.
On September 2, 1987, plaintiff Jack Grider was injured when he stepped on two nails as he was loading plywood onto a truck. Rev. Grider, the plaintiff's father, had called the plaintiff and asked him to remove some plywood from his property. The plywood was part of a deck that had been dismantled by Rev. Grider that he planned to use in another location.
When Rev. Grider dismantled the deck, he stacked the lumber into two stacks in no discernible order. He removed some of the nails and placed them in a wheelbarrow. Rev. Grider did not finish removing all of the nails before the plaintiff came to remove the plywood.
The plaintiff, accompanied by a friend, loaded the first stack of plywood. As the plaintiff loaded the first stack, he noticed that all the nails had been removed from the plywood. While in the process of loading the second stack of plywood, plaintiff *105 stepped on two nails located in a board near the second stack.
On September 7, 1988, Jack and Alice Grider filed suit against Rev. Grider, seeking damages for injuries Jack Grider received when he stepped on the nails. Mrs. Grider filed a claim for loss of consortium as a result of her husband's injury. The plaintiffs alleged that Rev. Grider failed to use reasonable care in maintaining his premises and had thereby failed to keep them in a safe and suitable condition.
Rev. Grider moved for summary judgment and supported his motion with excerpts from the depositions of the parties. The trial court granted the motion, concluding that there was no genuine issue of material fact and that Rev. Grider was entitled to a judgment as a matter of law. Rule 56(c), A.R.Civ.P. This appeal followed.
In reviewing the summary judgment, we note that this case was filed after June 11, 1987; therefore, the "substantial evidence rule" is the applicable standard in this case. The "scintilla rule" was abolished by the legislature effective June 11, 1987, as to cases filed after that date. Ala. Code 1975, § 12-21-12. The act abolishing the scintilla rule did not change the procedure for handling the burden of going forward with the evidence. Therefore, if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden of going forward with the evidence still shifts to the nonmovant; however, the burden is now greater than in the past, because the nonmovant must show "substantial evidence"rather than simply a scintillain support of his position. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989).
The plaintiffs argue that Rev. Grider breached a duty to warn Jack Grider of a dangerous condition caused by the presence of the nails. Rev. Grider, as a landowner, owed a duty of care to one coming onto his property by express invitation. The extent of that duty is dependent upon the plaintiff's status as a licensee, an invitee, or a trespasser.
The plaintiffs contend that Jack Grider held the status of a business invitee on the day he was injured. In order to determine that Jack Grider was a business invitee, we must find that he entered onto Rev. Grider's property for a purpose that was of material or commercial benefit to Rev. Grider, or of mutual benefit to the two of them. Knight v. Seale, 530 So.2d 821, 822 (Ala.1988); Autry v. Roebuck Park Baptist Church, 285 Ala. 76, 229 So.2d 469 (1969). Rev. Grider derived a material benefit from having the plaintiff remove the boards from his property. We agree that the evidence indicates that on the day of Jack Grider's injury, he held the status of an invitee.
In Quillen v. Quillen, 388 So.2d 985 (Ala.1980), the defendant asked the plaintiff, his brother, to help him erect an antenna. At one time the plaintiff had been engaged in the business of television installation and repair. After he had installed the antenna and while he was descending from the roof, the ladder slipped from under him, causing him to fall 12 or 13 feet to the ground.
In Quillen, we clearly expressed the standards applicable to the duty owed an invitee:
"In the definitive case of Lamson & Sessions Bolt Co. v. McCarty, 234 Ala. 60, 173 So. 388 (1937), this Court discussed at length the duty owed by a landowner to an invitee. At 234 Ala. 63, 173 So. 391, the Court held:
"`This court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them, by the use of ordinary care, to avoid it. Geis v. Tennessee Coal, Iron & R.R. Co., 143 Ala. 299, 39 So. 301.
*106 "`This rule ... includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation.'
"Therefore, as a general rule, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care. As stated by the Court in Lamson & Sessions Bolt Co., supra, at 234 Ala. 63, 173 So. 391:
"`In 45 C.J. § 244, p. 837, the rule is thus stated: "The duty to keep premises safe for invitees applies only to the defects or conditions which are in the nature of hidden dangers, traps, snares, pitfalls, and the like, in that they are not known to the invitee, and would not be observed by him in the exercise of ordinary care. The invitee assumes all normal or ordinary risks attendant upon the use of the premises, and the owner or occupant is under no duty to reconstruct or alter the premises so as to obviate known and obvious dangers, nor is he liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care."`
"Accord, McRee v. Woodward Iron Co., 279 Ala. 88, 182 So.2d 209 (1966); Claybrooke v. Bently, 260 Ala. 678, 72 So.2d 412 (1954). The entire basis of an invitor's liability rests upon his superior knowledge of the danger which causes the invitee's injuries. Gray v. Mobile Greyhound Park, Ltd., 370 So.2d 1384 (Ala.1979); Tice v. Tice, 361 So.2d 1051 (Ala.1978). Therefore, if that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable."
388 So.2d at 989 (emphasis original).
We are of the opinion that in this case, the nails, being in an area where a deck had been dismantled, constituted an open and obvious danger on the defendant's property, which the plaintiff, in the exercise of reasonable care, should have recognized. In his deposition, Jack Grider testified that he knew nails were present in the area:
"Q All right. And you said you saw a wheelbarrow that had nails?
"A Yes, sir. It was about half full of nails, bent nails, you know, that had been pulled out of lumber.
"Q Were you aware then that nails were out there?
"A I thought they was out of the lumber where the nails, you know, in the wheelbarrow, and that load that we was loading, I thought, you know, all of that had it out.
"Q You assumed because there were nails in the wheelbarrow that all of the nails had been removed from the boards?
"A Yes, sir, because that we loaded there wasn't no nails in. It had been plain.
"Q From the
"A The first pile.
"....
"Q you didn't see any nails in those boards?
"A No, sir. The nails had been pulled out of those boards.
"Q And you assumed, based on that and the wheelbarrow with the nails in it
"A That there was noyes, sir, I assumed that they was out.
"....
"Q Before you started loading the boards on the truck, did you look at the piles to see whether or not there were any nails in them?
"A Well, I looked at the one pile and there were no nails in it.
"Q But you didn't look at the second pile?
"A No, sir.
"Q Any reason why you didn't?
"A No, sir. I just assumed a wheelbarrow full of nails there and the pile that didn't have any nails, I figured all of *107 them was out because it looked like all the nails had been in all the boards.
"Q All right. You stated that when you were loading some of the boards onto the truck, that you stepped back?
"A Yes, sir. I was loadingwe was loading the first load, and I stepped back and stepped on one of the other pile that was laying there.
"Q Was the nail laying on the ground or was it sticking up out of a board?
"A It was sticking up out of a board.
"Q Okay. Did you or Sonny disturb any of the lumber in that second pile before you started working on it?
"A No, sir.
"Q When you stepped back, did you kick any boards out of the way?
"A No, sir.
"Q When you stepped back you just
"A When I stepped back I stepped on a nail.
"Q All right. And the nail was sticking up through a board?
"A Yes, sir. In fact, there was two punctures, two nails in that board.
"Q Okay. There were two nails sticking up out of the board?
"A Yes, sir. And both of them got me.
"....
"Q What foot was it that ... stepped on those two nails?
"A My right foot.
"Q Did you also step on a nail with your left foot?
"A Well, I scratched it with a nail, yes, sir.
"Q When was that? Before or after you stepped on the two nails?
"A It was before I believe
"Q Before you stepped
"A After I stepped on them, I turned around and one almost got me in the other foot. But it just scratched it. It didn't, you know, go through.
"....
"Q Did you see any other nails out there in any of the other boards?
"A Well, I did after I stepped on that nail. I seen that pile hadn't beenthe nails hadn't been pulled out of that pile.
"Q To see whether or not any nails had not been pulled out of that pile, did you have to dig through the pile to see that, or were there boards sitting on top with nails sticking in them?
"A Well, I didn't see any sticking up. I didn't even see the one that I stepped on until I stepped on it.
"Q Okay. But didI guess my question is, when you noticed nails in the other boards after you stepped on the two nails, did you have to dig through the pile or disturb the boards to see the nails, or were the nails there visible without you having to disturb the pile?
"A I didn't see the nail. There was some visible, I'm sure, but they wasn't visible enough for me to see them.
"....
"Q But you became aware, as you worked on the pile, that there were nails?
"A Yes, sir. After I stepped on that one, I knew there was nails in it then. But until I stepped on it, I didn't know that it was. Then I knew there was.
"Q Well, you didn't examine either of the piles before you started working on them to see if there were nails in them?
"A No, sir.
"Q And even after you stepped on the nail, you didn't examine the second pile to see if there were more nails in it, did you?
"A Well, I looked then after I stepped on the nail and saw that there was nails in the second pile, yes, sir."
Because of the open and obvious nature of the nails, and plaintiff's knowledge of the danger posed by nails, Rev. Grider was under no duty to warn the plaintiff of any danger associated with walking in the area and stepping on nails. Therefore, the trial court did not err in entering the summary judgment in favor of Rev. Grider.
AFFIRMED.
MADDOX, ALMON, HOUSTON and STEAGALL, JJ., concur.
HORNSBY, C.J., and JONES, SHORES and KENNEDY, JJ., dissent.
*108 HORNSBY, Chief Justice (dissenting).
I respectfully dissent. The majority has allowed the trial judge to decide what should be presented to the jury.
This Court has recently held in Bogue v. R & M Grocery, 553 So.2d 545 (Ala.1989), that a business invitee was owed a duty by the business invitor to exercise reasonable care in maintaining the premises in a reasonably safe condition. We wrote:
"Once it has been determined that the duty owned to an invitee has been breached, questions of contributory negligence, assumption of the risk, and whether the plaintiff should have been aware of the defect, are normally questions for the jury."
553 So.2d at 547.
In Bogue, the plaintiff was injured when she slipped and fell on the defendant's premises. She asserted that her fall was caused by a significant drop in elevation from the doorway to the parking lot. After this Court reviewed the law as to open and obvious dangers, as that law is stated in Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980), we determined that there were a number of factual issues for the jury in Bogue, "as there usually are in negligence cases." Quillen at 989. The plaintiff in Bogue established evidence from which a jury could find that a defect existed in the ramp at the door of the grocery store, and we reversed the defendant's summary judgment.
Similarly, in Banks v. Bayou Bend II, Ltd., 552 So.2d 1070 (Ala.1989), we again held that whether the plaintiff could appreciate an open and obvious danger was a question of fact "properly within the province of the jury." 552 So.2d at 1072, citing Bush v. Alabama Power Co., 457 So.2d 350, 354-55 (Ala.1984). In Banks, the plaintiff was injured when the stair landing on which he was working collapsed. We concluded that there was evidence that the defendant knew or should have known of the dangerous condition of the landing, and the facts were disputed as to whether the plaintiff had been informed that the stair beam was rotten. We held that summary judgment was improper. "Factual conflicts such as this must be resolved by the trier of fact." Banks, 552 So.2d 1070, citing Rule 56(c), A.R.Civ.P., and Boswell v. Coker, 519 So.2d 493 (Ala.1987).
Rule 56 A.R.Civ.P. precludes summary judgment when there are questions of material fact yet to be resolved regarding whether the invitee plaintiff knew of the dangerous condition that allegedly caused the plaintiff's injury. This principle is illustrated by several cases. In Williams v. Newton, 526 So.2d 18 (Ala.1988), we determined that there was conflicting evidence as to whether the plaintiff had actual knowledge of ice at the entrance to the defendant's office. Even though the plaintiff's deposition indicated that she had walked over the same ice when coming in the door, in giving that indication she was simply acknowledging that she knew the ice had to have been at the door when she entered the building, because she fell on the ice when leaving. We could not conclude from the record that the plaintiff did not use reasonable care upon entering the building. Her deposition did not affirmatively show that she had been made aware of the ice upon entering the office; thus, a question of fact remained for the jury.
In Marquis v. Marquis, 480 So.2d 1213 (Ala.1985), one brother was assisting another in cutting firewood when he was injured by one of the trees he was cutting. The trial court directed a verdict against the plaintiff on both counts of his complaint, finding that due to the openness and obviousness of the dangerous condition that caused the plaintiff's injuries, there was no breach of duty by the defendant. This Court reversed, holding that the question of whether the plaintiff should have recognized the danger when cutting the tree was one for the jury.
As we stated in Terry v. Life Ins. Co. of Georgia, 551 So.2d 385 (Ala.1989):
"The Restatement (Second) of Torts § 343A (1965) states:
"`(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the *109 possessor should anticipate the harm despite such knowledge or obviousness.'
"Comment b defines `known' and `obvious.' In order to conclude that the defect was `known,' the plaintiff must be aware of the existence of the condition and must appreciate the danger it involves. `Obvious' means that the condition and risk are apparent to, and would be recognized by, a reasonable person in the position of the invitee. Therefore, the `obvious' test is an objective one."
551 So.2d at 386 (emphasis original).
In Terry the trial court had granted summary judgment for the defendant. We reversed, allowing a jury to determine whether the allegedly negligent maintenance of stair carpeting was an open and obvious dangerous condition. 551 So.2d at 386.
This case should be decided by the jury also. There are questions of fact about the ability of the plaintiff to appreciate the possible danger and his actual knowledge of the presence of the nails just prior to the accident. The defendant's testimony reveals that he had told the plaintiff that he had removed all the nails from the boards, but had forgotten to tell him that the second stack of boards still contained nails. The plaintiff's testimony indicates that he had been moving boards from which all nails had been removed and that he saw a wheelbarrow full of nails that had been removed and was caused to believe that the second stack of boards was free of nails also.
Whether the danger presented by the nails might be considered open and obvious is for the jury to decide.
JONES and SHORES, JJ., concur.