The plaintiff, Glenda Kay Bishop, appeals from a summary judgment in favor of the defendant, Yvonne South. Sherri Raspberry was also a defendant, and the summary judgment was also in her favor, but Bishop does not appeal as to Raspberry. Bishop was injured when she fell while on South's premises. The issue is whether Bishop presented substantial evidence that South breached her duty to exercise ordinary and reasonable care in providing and maintaining a reasonably safe premises.
On February 1, 1992, Bishop visited The Carousel, a store owned by South and her daughter. Bishop and her three stepdaughters entered the building and shopped for a few moments. As Bishop exited, she fell down the three steps from the door to the sidewalk and broke her ankle.
South offered Bishop's deposition in support of her summary judgment motion, and Bishop offered portions of it in opposition to the motion. In her deposition Bishop testified as follows concerning her fall:
 "A. I was following the girls out the door, and I stepped with my left foot and I didn't hit anything, and my right foot caught on something in the doorway, and then I tumbled down the three steps and landed on the bottom — the sidewalk.
 "Q. So your right foot caught on something in the doorway and you fell down the steps?
"A. Yes.
 "Q. But it's your testimony that you did not actually fall on the steps? Well, let me rephrase that. That's probably a poor question. You were not on the steps when you fell?
"A. Yes.
"Q. You were or you were not?
"A. I was on the steps when I —
 "Q. Did you — are you saying that your foot caught on the steps or your foot caught on something in the doorway?
"A. In the doorway.
 "Q. So it wasn't anything on the steps that caused you to fall?
"A. No.
"Q. But when you fell, you fell down the steps?
"A. Yes.
"Q. Do you know what you caught your foot on?
 "A. No, I don't. Something in the threshold, I guess.
"Q. But you don't know?
"A. My right toe caught on something.
 "Q. Did you stub your right toe in the threshold; is that what you're saying?
 "A. All I know is that I stepped with my left foot and I didn't hit anything, and my right foot caught on something and I fell.
 "Q. But you don't have any idea what it was that you caught your right foot on?
"A. The threshold.
 "Q. Well, do you know that or are you guessing that?
 "A. Well, it all happened so fast that you just have to try and think.
 "Q. Well, did you ever look back after you fell and see what your foot caught on?
"A. After I fell, yes.
 "Q. And what did you see that you think you caught your toe on?
 "A. I seen the threshold raised up off of the step.
 "Q. But there was not — was there any foreign object in the doorway or on the steps, or anything like that, that you fell on?
"A. No. All I saw was the threshold.
 "Q. There wasn't anything like a banana peel, water, or anything like that?
"A. No.
 "Q. So what you think happened is, as you were exiting the store that you caught your — you stepped out first with your left foot?
"A. Yes. *Page 444 
 "Q. I guess you stepped out onto the landing or the top step?
"A. That's — yes.
 "Q. And then when you followed with your right foot, you caught your toe of your shoe on the threshold of the doorway and tumbled down the steps; is that a fair statement?
 "A. Well, when I stepped out with my left foot, I didn't seem to make contact with anything. Then my right foot caught on the threshold.
 "Q. What do you mean you didn't make any contact with anything? Are you saying you missed the step, or what?
 "A. No. I don't know. I just remember stepping out with my left foot and then my right foot caught on something.
 "Q. Well, do you remember your left foot ever coming in contact with the ground?
"A. No.
 "Q. Did you have the sensation like you would have — have you ever had the sensation where you're going down steps, and you step for what you think is a step and where you think it is it's not there, and you go down further than you're anticipating going?
"A. Yes.
"Q. Is that what it was like?
 "A. Yes. I don't know if it was farther, but, yes.
 "Q. Is that what caused your right toe to get caught?
"A. I don't know.
 "Q. Did you lose your — when you went to step with your left foot and you stepped and you didn't hit ground when you thought you were going to hit ground, is that what caused you to lose your balance?
"A. I don't know.
". . . .
 "Q. In your lawsuit that was filed in this case on your behalf you say that as you were leaving the premises — the store — that you tripped and fell down the steps; is that basically what happened?
"A. My foot caught on something, yes.
 "Q. You also say that it — the premises were defective and dangerous. What was it about the premises that was defective and dangerous?
 "A. Well, after I looked at it, there is boards there and like exposed areas, and there was chips of board off. But now, whether that caused it, I assume; I don't know.
 "Q. When you say boards there, are you talking about just like a board on the threshold of the door?
 "A. Yes. The threshold is raised off of the steps, yes.
"Q. How high is it raised?
 "A. I don't know. It just looks about like . . . two or three inches.
 "Q. Is it a gradual threshold; in other words, is it sloped and curved, or is it just a sharp or square sort of thing that sticks up? Do you understand what I'm saying?
 "A. Yes. It looks like it's just straight and it sticks up.
 "Q. As I understand what you said, you don't know whether that's what you tripped on or not?
 "A. That's where my fall started, so I tripped over the threshold — caught my foot.
 "Q. You think the threshold is what you caught your toe on?
"A. Yes.
". . . .
 "Q. Anything else about the premises that you think is dangerous or defective?
"A. The threshold just doesn't look too safe."
Bishop also presented the affidavit of Rudd Robison, a registered architect for the firm of Staub, Robison Williams, P.A. He stated that he had personally examined the premises where Bishop fell and that he had come to the following conclusions:
 "1. The exterior door should swing outward and not inward. This allows for quick and safe egress in the event of an emergency.
 "2. A landing should be provided that projects outward or in the direction of travel, not less than four (4) feet. *Page 445 
 "3. The finished floor elevation of this building is raised above the finished sidewalk approximately 24". This requires that stair(s), ramp(s), and handrail(s) be provided. These elements should be designed in accordance [with] applicable building codes. The code typically followed for design is the 1991 standard building code with 1992 revisions.
 "The purpose of these requirements is to provide for the safety of those entering and leaving the premises. The lack of a proper[ly] design[ed] landing, stairs, handrails and ramps presents a hazardous means of ingress and egress. . . .
 "It is my opinion that the entrance to this building is unreasonably dangerous because of its physical structure and geometric shape and its failure to comply with applicable recognized building codes. The entrance to this structure is not constructed or maintained in conformance with any known standard in the construction industry. Said structure constitutes a defect in the condition of the premises and said structure poses a hazard to patrons entering and leaving said premises."
In support of their motion for summary judgment, the defendants argued that Bishop should have known of the danger because she had visited the premises twice before. They presented excerpts from Bishop's deposition, as well as excerpts from their own depositions and their own affidavits. In an affidavit, Sherri Raspberry, who owned another business in the same building, stated that "[t]here was nothing out of the ordinary about the design or dimensions of the threshold." In South's deposition, she stated that her nine-year-old daughter had witnessed Bishop's fall and had told her that Bishop "slipped on the sidewalk."
Bishop was a business invitee on South's premises at the time of her accident. Because she was a business invitee, South owed her a duty to exercise reasonable care in maintaining her premises in a reasonably safe condition. Mann v. Smith,561 So.2d 1112, 1113 (Ala. 1990); Collier v. Necaise, 522 So.2d 275
(Ala. 1988); Quillen v. Quillen, 388 So.2d 985, 989 (Ala. 1980). However, " 'an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care.' " Baldwin v. Gartman, 604 So.2d 347, 350
(Ala. 1992), quoting Quillen, 388 So.2d at 988.
Robison said in his affidavit that the entrance to the building violated applicable building codes and was "unreasonably dangerous." Viewing the evidence most favorably to Bishop, we conclude that she presented substantial evidence that the entrance to South's building was not maintained in a reasonably safe condition and that this unsafe condition caused Bishop's fall.
South argues that she did not breach any duty, because, she says, any danger was open and obvious, and she argues that, because Bishop had visited the premises before, she should have known of the danger presented by the entrance. The facts of this case are strikingly similar to those of Mann v. Smith,supra, and Bogue v. R M Grocery, 553 So.2d 545 (Ala. 1989). On the authority of those cases, we hold that the plaintiff presented a genuine issue of material fact on the question whether any danger presented by the entrance was open and obvious. Therefore, South was not entitled to a summary judgment on this basis.
Bishop produced substantial evidence that the entrance of South's building was not maintained in a reasonably safe condition and that Bishop's fall was caused by a failure so to maintain the premises. The judgment is therefore reversed and the cause is remanded.
REVERSED AND REMANDED.
HORNSBY, C.J., and HOUSTON, KENNEDY and COOK, JJ., concur. *Page 446