**Lapurisima F. HANDLEY, Plaintiff,**

v.

**UNITED STATES of America and Non–Commissioned Officers' Club, a nonappropriated fund instrumentality of the United States, Defendants.**

Civ. A. No. 94–D–665–S.

United States District Court,
M.D. Alabama,
Southern Division.

April 17, 1995.

Kenneth C. Sheets, Jr., Dothan, AL, for plaintiff.

Redding Pitt, U.S. Atty., Kenneth E. Vines and Artur G. Davis, Asst. U.S. Attys., for defendants.

1. Pursuant to 28 U.S.C. § 1331, "[t]he district courts have original jurisdiction of all civil actions arising under.... the laws.... of the United States."

## MEMORANDUM OPINION

DeMENT, District Judge.

This action was heard before the United States District Court for the Middle District of Alabama, Southern Division, on April 10, 1995. Plaintiff alleges that Defendant's servants, agents and employees negligently maintained the floor of the Fort Rucker, Alabama, NCO Club. Allegedly, this condition caused Plaintiff to "slip and fall." As a result, Plaintiff avers that she sustained injuries to her left hip and knee. Plaintiff contends that Defendant possessed knowledge that the surface of the floor was slippery. Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Contrarily, Defendant contends that the surface was not negligently maintained, and, therefore, not liable to Plaintiff.

### JURISDICTION & VENUE

Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C. § 1346; therefore, the court's jurisdiction is predicated on the invocation of a federal question.[1] Personal jurisdiction and venue are not contested.

### BACKGROUND

On June 7, 1992, Lapurisima F. Handley (hereinafter Ms. "Handley" or the "Plaintiff") visited the Non–Commissioned Officers' (NCO) Club at the Fort Rucker United States Army Aviation Center to play bingo.[2] Accompanied by Christine Handley, Plaintiff's daughter, Handley arrived at the NCO Club at approximately 1:30 p.m. While playing bingo, Plaintiff was seated at a table in a carpeted area that was the central site for the bingo games. At approximately 2:00 p.m., Plaintiff left her table to obtain another bingo card from the lobby area, which is situated immediately inside the door of the NCO Club.

To reach the lobby area, Handley traversed an uncarpeted tile floor. While crossing the uncarpeted area, Handley lost her

2. Bingo games are a regularly scheduled activity at the NCO Club, and routinely attract as many as 150 participants.

footing and fell. Plaintiff claims that she landed on her left hip and knee. Neither before nor after her accident did Plaintiff notice any water or other foreign substance on the tile floor. Moreover, Plaintiff did not witness any slips or falls by other persons. However, Handley noticed that the floor appeared shiny. The United States of America (hereinafter the "United States" or the "Defendant") contends that the finish applied to the floor served a cosmetic purpose intended to enhance the appearance of the tile surface.[3]

According to the United States, Johnson's Complete Floor Finish is applied to the NCO Club's floor once every two months. This product is marketed as a slip-resistant product that provides durable, lasting protection. Defendant contends that there are no indications that the NCO Club's maintenance crew ever applied Johnson's Complete Floor Finish improperly. Also, avers the United States, there were never any complaints about the product's effectiveness.

Plaintiff alleges that minutes following her fall, Peter Whitlock (hereinafter Mr. "Whitlock"), the manager of the NCO Club, informed her that the floor had been waxed that day. Whitlock is less than certain that he spoke to Handley on the day of the accident; however, he states with unequivocal certainty that he never made reference to the floor being waxed that day because wax is not applied to the NCO Club's tile surfaces. Essentially, Defendant avers that Johnson's Complete Floor Finish is not a wax.

The janitor of the NCO Club, Jimmy Tyson (hereinafter Mr. "Tyson"), and the manager on duty at the time of Plaintiff's fall, Louis Rios (hereinafter Mr. "Rios"), corroborate the assertion that wax is not applied to

the tile area of the NCO Club. Whitlock, Tyson and Rios all frequently circumnavigated the club on June 7, 1992, and assert that they noticed nothing unusual, neither did they notice any foreign objects or debris on the floor. Furthermore, they received no complaints from customers that the floor was wet or slippery.

On May 31, 1994, Plaintiff filed the above-styled action. Handley contends that due to Defendants' negligence in maintaining the surface upon which she had fallen she experienced physical injuries to her back, hips and legs, incurred excessive pain and suffering from said injuries, suffered inordinate resulting mental anguish, and caused to incur medical fees and expenses. Defendants deny that they behaved negligently and contends that they exercised reasonable care in maintaining the NCO Club's premises in a reasonably safe condition.

## DISCUSSION

■ Plaintiff's claim arises under the Federal Tort Claims Act, 28 U.S.C. § 1346(b).[4] Pursuant to 28 U.S.C. § 2674, the United States may be sued for the acts or omissions of federal employees, and is liable to the same extent as a private person in like circumstances.[5] FTCA claims are governed by the legal standards of the state in which respective parties are injured. *See* 28 U.S.C. §§ 1346(b), 2674. Therefore, in determining the United States' liability in this action, should any exist, the Court must apply Alabama law.

■ Handley contends that she sustained injuries proximately caused by the negligence of the NCO Club's agents and employees in maintaining the establishment's floor. Under Alabama law, a host owes a duty to its business invitees to "exercise reasonable care

3. *The product applied to the tile area is Johnson's Complete Floor Finish which produces a gloss on the surface.*

4. Section 1346 provides in relevant part that "... the district courts ... shall have exclusive jurisdiction of all civil actions on claims against the United States, for money damages ... or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment,

under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

5. "The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances ..." 28 U.S.C. § 2674.

in maintaining [its] premises in a reasonably safe condition." *McClendon v. Mountain Top Flea Market, Inc.*, 601 So.2d 957, 959 (Ala.1992) (citing *Bogue v. R & M Grocery*, 553 So.2d 545, 547 (Ala.1989)); *see also Maddox v. K–Mart Corp.*, 565 So.2d 14, 16 (Ala. 1990). In the definitive case of *Lamson & Sessions Bolt Co. v. McCarty*, 173 So. 388 (Ala.1937), the Alabama Supreme Court held and explained:

> " 'This Court is firmly committed to the proposition that the occupant of premises is bound to use reasonable care and diligence to keep the premises in a safe condition for the access of persons who come thereon by his invitation, expressed or implied, for the transaction of business, or for any other purpose beneficial to him; or, if his premises are in any respect dangerous, he must give such visitors sufficient warning of the danger to enable them by the use of ordinary care, to avoid it' " (citation omitted).

> " 'This rule.... includes (a) the duty to warn an invitee of danger, of which he knows, or ought to know, and of which the invitee is ignorant; and (b) the duty to use reasonable care to have the premises to which he is invited in a reasonably safe condition for such contemplated uses, and within the contemplated invitation."

*Lamson & Sessions*, 173 So. at 391; *see also Quillen v. Quillen*, 388 So.2d 985 (Ala.1980).

■ To prevail in this action, Handley must demonstrate that her injury was proximately caused by the negligence of the host or one of its servants or employees. *Maddox*, 565 So.2d at 16. In a "slip and fall" action, such as the one before the court, where the plaintiff contends that a foreign substance caused her to fall, she must establish that the host possessed actual or, at the absolute minimum, constructive knowledge of the substance. *Id.* To impute constructive knowledge, Handley must show that the substance had been on the floor for a sufficient length of time so that it might reasonably have been discovered. *Id.* In the alternative, Plaintiff may provide evidence that Defendant was delinquent by not discovering and removing the substance. *Id.* Even

where, as here, Plaintiff proves that she had an accident, she is not entitled to any presumption of negligence because the principle of *res ipsa loquitur* is inapplicable in slip and fall cases (Handley must demonstrate negligence by the host and that such negligence proximately caused her injury). *Ex parte Travis*, 414 So.2d 956, 958 (citing *Great Atlantic and Pacific Tea Co. v. Bennett*, 103 So.2d 177 (Ala.1958)).

■ Here, Plaintiff has failed to prove that the tile floor which she claims caused her injury was maintained negligently. During her testimony, Plaintiff stated that on June 7, 1992, the floor was uncommonly shiny. Handley stated that the tile floor was always drab or dull. However, Plaintiff admitted that she had only seen this particular floor on one previous occasion. When asked about the wetness or slickness of the floor, Plaintiff replied that the floor was only shiny, not slick or slippery. Moreover, Plaintiff never testified that the floor was wet or moist. Plaintiff also remarked that she saw no water, food or other foreign substances on the floor and did not witness any NCO Club personnel manning swabs or brooms to remove spills or wastes.

The only testimony Plaintiff gives which could conceivably raise an inference that the floor contained a slick or slippery substance was that Whitlock, the duty manager, while assisting Plaintiff to her feet, allegedly stated that wax should not have been applied to the tiled surface. Plaintiff's daughter also testified that Whitlock made reference to the inappropriateness of wax being applied to the tiled surface. However, their stories are not corroborated by any other testimony or evidence introduced before or during the trial.

Tyson, the custodian supervisor, testified that no wax is ever applied to the NCO Club's tile surfaces.[6] Furthermore, Tyson asserted that Johnson's Complete Floor Finish is applied after the floor has been stripped and for cosmetic purposes only. According to Tyson, the tile section is stripped only twice a year. Mr. Tyson also testified that he saw Handley immediately following her accident and asked her if she needed

---

6. Mr. Tyson has worked in a housekeeping capacity at the NCO Club since 1989.

assistance. Plaintiff answered in the negative. When asked if Whitlock communicated with Plaintiff following her fall, Tyson responded that he did not see Whitlock after the accident and, therefore, Whitlock could not possibly have told Plaintiff that the floor had been waxed. Tyson further testified that he inspected the area in which Plaintiff's accident occurred shortly before her slip and fall; but, did not find any spilled food or drink or any other substance which would cause a person to slip and fall.

Whitlock likewise testified that wax is not applied to the tile surface of the NCO Club. Whitlock states that the Johnson product applied to the tile area is a skid-resistant formula which usually dries within ten minutes of application. Plaintiff offered no evidence to rebut this assertion. Also, Whitlock indicated that he does not recall communicating with Plaintiff following the accident; however, he stated with absolute certainty that he did not tell Plaintiff that wax was applied to the floor.

Luis Rios, the manager on duty at the time of Plaintiff's slip and fall, testified that he remembered Plaintiff's accident. Following Plaintiff's fall, Mr. Rios stated that he inspected the area but the floor was clean and in no regards slippery. Rios stated also that he did not see Mr. Whitlock anywhere around Handley following the incident.

Frank McClanahan's testimony is similar to those of Tyson, Whitlock and Rios. Mr. McClanahan is a safety and occupational health inspector for the United States Army and has inspected the NCO Club since 1990. Mr. McClanahan looks for deficiencies in the maintenance of the NCO Club which could cause injury to patrons or employees. McClanahan remarked that he has never found the floor to be slippery and had not heretofore heard any patron or employee complain about the condition of the tile or any other surface in the NCO Club.

Based on the trial testimony and evidence adduced therein, the court finds that Plaintiff has failed to prove that the NCO Club's floor was slippery or contained any other foreign substance which would cause one to "slip and fall." Therefore, the court finds, as matter of fact, that the responsible NCO Club personnel did not maintain the tile surface floor in an unreasonably safe manner. The fact that no other accidents occurred in the vicinity of Plaintiff's slip and fall and no other patrons complained about the condition of the floor on June 7, 1992, raises a strong inference that a slippery floor was not the proximate cause of Ms. Handley losing her footing, which means that the floor was not maintained negligently. This is a critical and pivotal factor in assessing liability. If a host could be found liable without the plaintiff demonstrating that the premises had been maintained in an unreasonably safe condition, the host would be, in effect, the plaintiff's insurer. This theory runs contrary to Alabama law. *See Ex parte Travis*, 414 So.2d at 958; *Maddox* 565 So.2d at 16; *see also McClendon*, 601 So.2d at 959.

### CONCLUSION

The court has found that the surface at issue was not maintained in an unreasonably safe condition. Furthermore, Defendant is not an insurer of its invitees. Accordingly, the court finds that Defendant is not liable to Plaintiff for injuries resulting from Plaintiff's fall which occurred on June 7, 1992.

A judgment in accordance with this memorandum opinion shall be entered separately.