Mary Jo Woodward sued the Health Care Authority of the City of Huntsville d/b/a Huntsville Hospital, on March 19, 1997, seeking to recover damages for personal injuries she sustained while on Huntsville Hospital's premises. Woodward alleged that she was a business invitee of Huntsville Hospital; that the hospital had negligently maintained the walkways to the entrance of the emergency room; and that its negligence had caused her injuries. Huntsville Hospital moved for a summary judgment on February 6, 1998. Woodward appealed, following the denial of her postjudgment motion. This case was transferred to this court by the supreme court, pursuant to § 12-2-7(6), Ala. Code 1975.
We note that in reviewing the disposition of a motion for summary judgment, we use the same standard the trial court used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co.,531 So.2d 860, 862 (Ala. 1988); Rule 56(c), Ala. R. Civ.P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant to present substantial evidence creating such an issue. Bass v. SouthTrustBank of Baldwin County, 538 So.2d 794 (Ala. 1989). Evidence is "substantial" if it is of "such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989). This court must review the record in the light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc.,564 So.2d 112 (Ala. 1990).
On the evening Woodward was injured, she was visiting Huntsville Hospital to inquire about her son, who had been taken to the emergency room. Woodward and her husband arrived at the hospital between 7:30 and 8:00 p.m. and parked their automobile in the parking garage adjacent to the hospital. This was Woodward's first visit to the hospitial. Woodward and her husband rode the elevator to the ground floor and exited the elevator to the right. They walked around a corner that led out of the parking garage, and they then proceeded to the emergency room. As they were walking toward the emergency room, Woodward fell off a curb *Page 816 
outside the parking garage; in the fall she injured her left leg and ankle. The curb was part of a sidewalk that was adjacent to the parking garage. A flat wheelchair ramp was cut into the middle of the sidewalk next to where Woodward fell.
Woodward contends that the trial court erred in entering the summary judgment on her premises liability claim. Huntsville Hospital argues that the summary judgment was properly entered because, it says, the curb on which Woodward fell was not a hidden defect, i e., that it was an open and obvious condition that was known to Woodward or that should have been discovered by her through the exercise of reasonable care. Huntsville Hospital's argument centers around the fact that Woodward testified during her deposition that had she been looking down when she stepped from the curb she would not have fallen.
Woodward was an invitee of the hospital. See Ex parte Wooten,681 So.2d 149 (Ala. 1996). Huntsville`hospital, as the invitor, owed a duty to Woodward to "use reasonable care and diligence to keep the premises in a safe condition or if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care."Boudousquie v. Marriott Management Services, Corp.,669 So.2d 988, 1000 (Ala.Civ.App. 1996). This duty is limited to hidden defects that are unknown to the invitee and would not be discovered by him in the exercise of ordinary care. Ex parteMountain Top Indoor Flea Market, Inc., 699 So.2d 168 (Ala. 1997). The owner of the premises is not an insurer of the safety of the invitee, and no presumption of negligence arises out of the mere fact of injury to the invitee. Id. The premises owner has no duty to warn the invitee of open and obvious defects in the premises, which the invitee is aware of or should be aware of through the exercise of reasonable care. Id. A condition is "obvious" if the risk is apparent to, and of the type that would be recognized by, a reasonable person in the position of the invitee. Hartzog v.Compass Bank, 686 So.2d 325 (Ala.Civ.App. 1996). A condition is "known" if the invitee is aware of the existence of the condition and appreciates the danger it involves. Id. Finally, questions of openness and obviousness of a danger and of the invitee's knowledge are generally not to be resolved on a motion for summary judgment. Harris v. Flagstar Enterprises, Inc.,685 So.2d 760 (Ala.Civ.App. 1996).
Woodward testified in her deposition that as she exited the hospital's parking garage she encountered a bright light that shone in her face. She testified that the contrast between the light in the parking garage and the light outside caused the walkway where she fell to look like one massive area of cement. She stated that she was focused on the emergency room entrance and did not see the wheelchair ramp. She further stated that had she been looking down she would not have fallen. Neither the curb nor the wheelchair ramp was marked with any warnings or other markings.
Woodward also presented this deposition testimony of her expert:
 "Q. What is your — and I'll let you kind of guide me through them. What is the first opinion that you've reached?
 "A. I developed my opinion pretty well much as you would walk the situation out, just the way of travel. When I — I came down the hallway, it was fairly well lit. You receive kind of a little bit of a shock from the light change, being at night, but — and it takes your eyes just a moment to readjust.
"Q. Then when you come on out of the doorway —
 "A. I would look to see where the emergency room was. I would proceed in that direction. One of the first things I noticed was the wheelchair ramp was not marked. With the Americans with Disabilities Act, it should have been marked in extreme contrasting colors, in contrasting colors, to make it visible.
"Q. Okay.
 "A. I noticed at night that because of the angle of the wheelchair ramp, when you come around the little dividing wall, when you turn the wall, you're looking directly down the ramp, and you cannot *Page 817 
see that there's a drop-off at all, because the slope's on the edge, the fact that the light is overhead [and] is casting no shadows, so you have just a flat concrete, and without any contrasting colors, you can't see the ramp is there. Also I noticed that when I came out of the doorway and looked toward the emergency exit the curb is not visible, because it's gray concrete and a gray concrete driveway, the curb was not even — was not visible.
". . . .
 "Q. The first item in this — in your opinion, as I understand it, is that there is a level change which creates a hazard for persons traversing on foot from the adjacent parking garage to the emergency room?
"A. Correct.
". . . .
 "Q. What is the basis for your opinion that the curb creates a hazard?
 "A. The change of height, the fact that it is a change of height, it is a trip hazard.
 "Q. You mentioned that it is impossible to see in this. What is the basis for that opinion?
 "A. Observation. When you come out of the door at night and you look toward the emergency room, the curb and the concrete are both the same color of gray concrete. The way the light is behind you, it casts no shadow, high and overhead. There is no visible way that you can see it. There's even — I even noticed at one spot on the video, as I was walking out at night, that even the lines in the concrete and the lines up, so if you walk out the door, you glance across the parking lot, it looks like a flat surface.
 "Q. And I assume that if you identified this as a hazard, you have some opinion as to a way to eliminate the hazard?
". . . .
 "A. Paint the curb. If the curb — to start with, the handicapped — well, back a little before that. The handicap ramp should have been marked in contrasting colors.
". . . .
 "A. That would have told the average person that there's a height change. The fact when you turn the wall there's this big blue or yellow or orange marking in front of you designating — which would also designate sidewalk, that there's a height change of some kind.
". . . .
 "A. Normal painting of curbs, such as was done in the parking deck, they were painted yellow, would have caused a color contrast and visually warned them of a drop-off or step-down.
 "Q. Okay, you've also reached an opinion that there should be a barrier to redirect the natural flow of pedestrian traffic. Could you explain that to me?
 "A. Yeah, either the barrier can be as little as paint markings on the ground to designate flow of travel, or it could have been, you know, a handrail down the curb, because if that was an unnatural flow of travel, it was kind of dumping them out into the ambulance path, so you know, a safety opinion, there should have been something to block. Like I say, it could have been as little as just marking where the sidewalk was, you know, pedestrian crosswalk."
(Emphasis added.) The expert also concluded that had the area been marked, it would have drawn the presence of the hazard to the attention of a pedestrian walking to the emergency room.
After viewing the evidence in a light most favorable to Woodward, as we are required to do, we conclude that questions of fact exist as to the openness and obviousness of the hazard and of Woodward's knowledge of the hazard. We recognize that Woodward stated had she looked down she would have noticed the curb and would not have fallen; however, questions exist as to whether a reasonable person in Woodward's position, under the conditions that existed at the time she was injured, would have noticed the hazard. The testimony indicates that, because of the existing lighting at the time, and the color of the sidewalk and driveway, the curb, or change in height from the sidewalk to the driveway, was not visible, but, rather, gave the appearance of one flat mass of concrete. The evidence *Page 818 
further indicates that had the curb been marked with paint or other markings it would have drawn a pedestrian's attention to the hazard.
Accordingly, the summary judgment in favor of Huntsville Hospital is reversed and the case is remanded for further proceedings.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.