In August 1998, Emma Browder and Elijah Browder went grocery shopping at a supermarket owned and operated by Food Giant, Inc. As was their custom, Elijah dropped Emma off at the entrance to the store and went to park the car. He then joined Emma inside to complete their shopping. After purchasing their groceries, Emma and Elijah left the store. Elijah was pushing the shopping cart containing their groceries, and Emma followed behind him. As the couple proceeded to their car, Emma's foot caught in what she *Page 595 
described as a hole in the pavement, and she fell, injuring her back, right shoulder, right wrist, right knee, and right ankle.
Emma and Elijah sued Food Giant, alleging that the premises of the supermarket contained a defect that caused Emma to fall and be injured; Elijah alleged a loss of consortium arising from Emma's injuries. Specifically, they alleged that there was a depression that contained a drainage pipe that constituted a hazard where the sidewalk in front of the supermarket adjoined the parking lot. Food Giant moved for a summary judgment, arguing that the condition that caused Emma's fall was an open and obvious one or, in the alternative, that Emma had been contributorily negligent as a matter of law. The trial court entered a summary judgment in favor of Food Giant, stating as grounds that the defect was open and obvious. Emma and Elijah appealed to the Alabama Supreme Court, which transferred the appeal to this court, pursuant to Ala. Code 1975, § 12-2-7(6).
We review a summary judgment de novo; we apply the same standard the trial court applied. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P.; see Lee v. City of Gadsden, 592 So.2d 1036, 1038
(Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989); see Ala. Code 1975, § 12-21-12(d). See Ex parte General Motors Corp., 769 So.2d 903 (Ala. 1999); West, 547 So.2d at 871; and Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794 (Ala. 1989), for further discussion of the application of the summary-judgment standard.
In Alabama, the liability of a premises owner turns in the first instance on the classification given to the injured party. See Ex parteMountain Top Indoor Flea Market, Inc., 699 So.2d 158, 161 (Ala. 1997). When a person visits the premises for commercial purposes, as in this case, the person is an invitee. Ex parte Mountain Top Indoor FleaMarket, Inc., 699 So.2d at 161. The duty of a premises owner to an invitee "`"is limited to hidden defects which are not known to the invitee and would not be discovered by him in the exercise of ordinary care."'" Id. (quoting Sisk v. Heil Co., 639 So.2d 1363, 1365 (Ala. 1994), quoting in turn Harvell v. Johnson, 598 So.2d 881, 883 (Ala. 1992)). Stated another way, a premises owner "`has no duty to warn a invitee of open and obvious defects in the premises which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part.'" Id. (quoting Shaw v. City of Lipscomb,380 So.2d 812, 814 (Ala. 1980)).
In support of its summary-judgment motion, Food Giant presented the deposition testimony of both Emma and Elijah. It also submitted the affidavit of the owner of Food Giant, John Virciglio, and photographs of the area in front of the supermarket taken from several angles. In response to Food Giant's motion, Emma and Elijah presented the affidavit of Dr. James Walters, a civil engineer.
Emma and Elijah both testified that the day of the fall was clear and sunny. Both testified that nothing obstructed Emma's view of the depression and drainage pipe. *Page 596 
Emma candidly admitted that she was not "looking for anything like that" and that she does not normally look in front of her while walking. In fact, Emma said that "my husband get[s after] me all the time, I don't never look, I be just walking." Elijah also testified that the reason Emma did not see the depression was because she "wasn't paying attention." The photographs[1] accompanying Food Giant's motion show that the light gray concrete sidewalk that runs along the front of the supermarket is formed by two different concrete pads that run parallel to one another. The front curb of the sidewalk, which is parallel to the front of the building, is marked with yellow paint. At the end of the right side of the building, both concrete pads slope to a black asphalt parking lot. One concrete pad ends approximately one and one-half feet from the end of the other concrete pad. At the end of the shorter of the two concrete pads, there is a small grassy area, apparently not covered by asphalt. At the end of the longer concrete pad, the grassy area becomes an area of red dirt located between two areas of asphalt that make up the parking lot. The parties refer to this area as a "ditch" or depression. The red-dirt depression contrasts sharply with the black asphalt. A metal pipe runs approximately one-third to one-half the length of the depression.
Emma and Elijah presented the affidavit of Dr. John Walters, a civil engineer. He stated that the area in which Emma fell was a "dangerous hazard." He based his opinion on the fact that the two concrete pads that make up the sidewalk ended at different points and that the elevation gradients of the sloped portions of the two concrete pads differed. He also noted that the sloping portions of the sidewalk led a pedestrian into an area where the pavement was uneven and broken and where there was a depression containing an only partially concealed pipe that, according to Walters, presented an unexpected slick surface to a pedestrian.
Emma and Elijah use Dr. Walters's affidavit as a basis on which argue that the summary judgment was improper on the authority of this court's decision in Howard v. Andy's Store for Men, 757 So.2d 1208 (Ala.Civ.App. 2000). In Howard, we reversed a summary judgment in favor of the premises owner because expert testimony revealed that a change in elevation between the parking lot and the concrete pad that formed the sidewalk fronting the store was concealed by the fact that the lip of the concrete pad had been splashed by black asphalt, causing the change in elevation to be difficult to perceive. After thorough consideration of Howard and similar cases involving expert testimony concerning a hazard created by a sloping concrete entrance to a grocery store located near gasoline pumps, Bogue v. R M Grocery, 553 So.2d 545 (Ala. 1989), an unmarked wheelchair ramp, Woodward v. Health Care Authority of Huntsville,727 So.2d 814 (Ala. 1998), and a metal doorway threshold, Waits v. CrownDodge Chrysler Plymouth, Inc., 770 So.2d 618 (Ala.Civ.App. 1999), we have concluded that the summary judgment in this case is proper.
The key difference between this case and Howard, Woodward, and Waits is that the experts in those cases stated that an invitee would not have seen the defect in the premises even if the invitee used *Page 597 
reasonable care. In Howard, the plaintiff's expert testified that "although anyone who was looking for it would notice the change in elevation between the parking lot and the sidewalk, the irregularity was one that `the casual observer may or may not appreciate [because] there is nothing to call . . . attention to it.'" Howard, 757 So.2d at 1210. The expert in Howard also pointed out that "because the black asphalt of the parking lot had been splashed up against the vertical edge of the white concrete, the height irregularity between the two surfaces was even less noticeable than it might otherwise have been." Id.
In Woodward, our supreme court reversed this court's affirmance of a summary judgment in favor of the premises owner where the plaintiff had tripped on an unmarked wheelchair ramp cut into the sidewalk. Woodward,727 So.2d at 818. The expert in Woodward testified that one could not see the wheelchair ramp or the curb because the entire area was gray concrete and there were no markings to delineate a change in height. Id. at 816-17. Likewise, in Waits, this court reversed a summary judgment for the premises owner where a plaintiff had tripped on the threshold of a doorway. Waits, 770 So.2d at 619. The expert in Waits stated in his affidavit that the threshold and the floor on either side were a similar shade of gray and that this "`causes the threshold to be camouflaged and concealed, and oftentimes totally undetected by a person walking through the doorway despite the use of reasonable and ordinary care by that person.'" Id.
We also find this case to differ from the situation presented inBogue. The grocery store in Bogue had a concrete entrance that sloped from the store front to the asphalt area surrounding the gasoline pumps.Bogue, 553 So.2d at 546. Automobiles could access the pumps on either side, which caused some automobiles to drive between the pumps and the entrance to the store. Id. The plaintiff slipped on the concrete slope as she walked from the store to her automobile. Id. The expert in Bogue
explained that a store patron would have been "naturally distracted" from taking care on the concrete slope because of the need to watch for automobiles accessing the gasoline pumps; thus the expert concluded that the design of the entrance constituted a "`hazardous pitfall.'" Id.
Although Emma and Elijah presented expert testimony indicating that the area of the parking lot in which she fell was a hazard, they failed to establish what the plaintiffs in Howard, Woodward, and Waits did — that the hazardous condition presented was not discoverable through the use of ordinary care on Emma's part. Emma's fall, from the best we can tell from the photographs and the testimony, occurred in the area in which the asphalt had been worn away to reveal red dirt underneath. Although the elevation of the asphalt and the elevation of the red-dirt surface differ, the evidence presented by Emma and Elijah fails to show that the difference in elevation was not perceivable by the use of ordinary care. In fact, Emma and Elijah both testified that Emma was not watching where she was going as she walked. Emma and Elijah also failed to establish what the plaintiff did in Bogue — that for some particular reason Emma's attention would have been "naturally distracted" from using care to navigate the red-dirt depression. See Skipper v.Shannon, Strobel Weaver, Inc., 623 So.2d 1072, 1074 (Ala. 1993) (distinguishing Bogue because the "plaintiff could have reasonably failed to perceive the particular risks posed by . . . the steep ramp"). Accordingly, we conclude that the *Page 598 
summary judgment in favor of Food Giant should be affirmed.
AFFIRMED.
Yates, P.J., and Thompson and Pittman, JJ., concur.
[1] The record on appeal contained black and white copies of the photographs. The circuit clerk's office, at this court's request, determined that the photographs that were attached to the motion were color copies of digital photographs. The circuit clerk "scanned" those exhibits and printed color copies for our use.