921 So.2d 428 (2005)
Bobbie FOWLER
v.
CEC ENTERTAINMENT d/b/a Chuck E. Cheese's, et al.
2040181.
Court of Civil Appeals of Alabama.
April 22, 2005.
Certiorari Denied August 12, 2005.
*429 J. Chris Cochran of Pittman, Hooks, Dutton, Kirby & Hellums, P.C., Birmingham, for appellant.
William G. Gantt of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellee CEC Entertainment d/b/a Chuck E. Cheese's.
Alabama Supreme Court 1041145.
THOMPSON, Judge.
On March 18, 2003, Bobbie Fowler sued CEC Entertainment d/b/a Chuck E. Cheese's ("CEC"), FSR Enterprises, and Ferris S. Richey Enterprises (FSR Enterprises and Ferris S. Richey Enterprises are hereinafter collectively referred to as "FSR" or "the FSR entities") seeking damages based on an injury sustained when she fell on stairs in front of the entranceway of a Chuck E. Cheese's restaurant ("the restaurant"). In her complaint, Fowler alleged that CEC and FSR were guilty of negligent and wanton conduct in causing her injuries. On December 19, 2003, CEC, as lessee of the building housing the restaurant, filed a cross-claim against FSR, as lessor, seeking indemnity in the event CEC was found liable. FSR answered the cross-claim.
On February 9, 2004, FSR filed a motion for a summary judgment seeking a judgment in its favor on the claims brought by both Fowler and CEC. Likewise, CEC filed a motion for a summary judgment on the claims brought by Fowler and on its *430 cross-claims against FSR. Fowler filed a response to the summary-judgment motions. In support of their respective summary-judgment motions, CEC and FSR attached copies of the lease for the property housing the restaurant; the deposition testimony of Ferris S. Richey, Jr., one of the owners of the FSR entities; and excerpts from the deposition testimony of Fowler and Bryan Freeman, a general manager employed at the restaurant. Fowler supported her response to the summary-judgment motions with similar exhibits and also included the deposition testimony of Joann Green, the general manager at the restaurant at the time of the incident; also attached to Fowler's response were black and white copies of photographs of the entranceway into the restaurant and of the stairs on which Fowler fell. On July 23, 2004, the trial court entered a summary judgment in favor of CEC and FSR on Fowler's claims. Fowler appealed to the Supreme Court of Alabama, which transferred the appeal to this court, pursuant to § 12-2-7(6), Ala. Code 1975.
The record indicates that Fowler was 65 years old at the time of the incident. Fowler regularly wears bifocals. On February 17, 2002, Fowler, along with members of her immediate family, attended the birthday party of her three-year-old granddaughter at a Chuck E. Cheese's restaurant located in Roebuck; it was the second time Fowler had patronized the restaurant. In her deposition testimony, Fowler testified that she was unsure about the exact time of day that the party took place on February 17, 2002, but she guessed that the party was from 2 p.m. to 4 p.m. Fowler walked up the two steps leading to the restaurant's front door without difficulty; the steps were painted yellow. According to Fowler, she did not notice a problem with the steps when she entered the restaurant.
After exiting the front door of the restaurant, Fowler stated that she began to walk down the two steps leading to the parking lot when her foot "snagged on something" and "threw [her] out on the pavement." Fowler further explained in her deposition that "when I stepped down, when my foot first hit [the stair], that's when my foot got caught in something and it threw me off and it bent my foot back in under me and when I landed on the pavement, I landed on my foot." Fowler testified that she landed on the pavement in front of the steps. While sitting on the pavement, Fowler observed a "dent out in the step." According to Fowler, the "dent" was painted yellow and "looked smooth" but it was not and the "dent" was in the middle of the step. Fowler testified that she was only carrying her purse when she fell, that she was wearing her glasses when she fell, and that she was looking down at the step before she fell. Fowler was wearing Keds brand tennis shoes when she fell. According to Fowler, she did not observe any loose gravel or other foreign objects on the step after she fell. Fowler did not speak with any restaurant employees after her fall.
Fowler injured both of her feet as a result of the fall. An MRI of Fowler's left foot indicated that the foot was broken. Fowler's right foot healed after six weeks; her left foot remained in a cast for several months. Fowler testified that, at her last doctor's appointment, the doctor said that her left foot had healed but that the foot could easily break again. Fowler testified that she continues to feel pain in her left foot and that her foot swells if she walks on it for extended periods of time. Fowler testified that she had never fallen and injured herself before the February 17, 2002, fall.
Joann Green, the general manager of the restaurant on February 17, 2002, testified *431 that she did not see the fall but that she filled out an incident report after Fowler fell. Green testified that she inspected the area after Fowler fell and saw no loose concrete or gravel on the stairs. According to Green, the "crack"[1] in the stair was not "broken up" in any way.
Green had worked at the Roebuck restaurant location for 13 years. According to Green, Fowler's fall was the first and only incident reported with regard to the outside of the restaurant; there had never been a problem with the step while she had been employed at the restaurant. Green testified that the crack in the step was present when she first started working at the restaurant's Roebuck location. Green testified that, in the years that she had worked at the restaurant, the crack in the step had become more visible. Green identified a crack running through the middle of the step in a picture of the entranceway to the restaurant that was produced by counsel for Fowler at Green's deposition. Green stated that she did not believe that the crack in the step was deep enough to "catch" someone's foot or toe. Green did not believe the crack was a tripping hazard.
Over the course of her employment at the restaurant, Green painted the steps in front of the restaurant twice. Green testified that she had used yellow paint and that she had painted the steps for cosmetic reasons. Green last painted the steps approximately one year before the February 17, 2002, incident. Green testified that it was her understanding that the landlord was generally responsible for the upkeep of the outside of the building. Green testified that she never reported a problem with the stairs to the landlord or to CEC upper management.
Bryan Freeman, a restaurant employee, replaced Green as general manager of the restaurant several months after the February 17, 2002, incident. At the time Fowler fell, Freeman was the assistant manager of the restaurant; he had held that position for five years. Freeman testified that there had never been a problem with the outside steps before Fowler fell. According to Freeman, one of the responsibilities of the manager on duty was to inspect the entranceway and to make sure the area was safe. Freeman testified that this primarily entailed sweeping up loose debris.
Ferris S. Richey, Jr., one of the owners of the FSR entities, testified that he had looked at the area where Fowler had fallen and could not identify what had caused Fowler to fall. According to Richey, the step was smooth. Richey could not identify anything on the step that would constitute a tripping hazard. Richey testified that no one had fallen on the steps before Fowler fell on February 17, 2002.
Richey testified that CEC was responsible for the construction of the steps leading to the entrance of the building. According to Richey, CEC designed and built the entranceway. Richey testified that neither CEC management nor CEC employees notified him that the steps needed repair. Richey further testified that the only items the FSR entities were responsible for repairing under the lease were structural in nature, such as the roof, walls, and floor.
In August 1982, FSR entered into a lease agreement with CEC, then doing business as Showbiz Pizza Place, Inc. Pursuant to the lease agreement, FSR agreed "to maintain and keep in good repair the *432 structural elements of the floor, foundation, walls, and roof of the building constructed upon the demised premises." In turn, CEC agreed to maintain, at its own cost and expense, in good condition and repair, the demised premises. CEC's repair and replacement obligation included, among other things, all "exterior entrances."
On appeal, Fowler contends that the trial court erred by entering a summary judgment in favor of CEC and FSR. Fowler specifically argues that the crack in the step was not "open and obvious" and, thus, that she could not have possibly appreciated the danger posed by the crack in the step. Fowler focuses her argument on appeal on CEC's alleged liability.
A motion for a summary judgment is properly granted where no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56, Ala. R. Civ. P.; Bussey v. John Deere Co., 531 So.2d 860 (Ala.1988). "When the movant makes a prima facie showing that those two conditions are satisfied, the burden shifts to the nonmovant to present `substantial evidence' creating a genuine issue of material fact." Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999) (quoting Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989)). "Substantial evidence" is "evidence of such a weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). In reviewing a summary judgment, this court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts concerning the existence of a genuine issue of material fact against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
It is undisputed that Fowler was an invitee of the restaurant. See Browder v. Food Giant, Inc., 854 So.2d 594, 595 (Ala.Civ.App.2002)("When a person visits the premises for commercial purposes ... the person is an invitee."). Thus, CEC owed a duty to Fowler to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care." Boudousquie v. Marriott Mgmt. Servs., Corp., 669 So.2d 998, 1000 (Ala.Civ.App.1995).
"`The rule of law for cases such as this is that there is a duty upon all storekeepers to exercise reasonable care in providing and maintaining a reasonably safe premises for the use of their customers. The storekeeper is not an insurer of the customers' safety but is liable for injury only in the event he negligently fails to use reasonable care in maintaining his premises in a reasonably safe condition. No presumption of negligence arises from the mere fact of injury to the customer. The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees. Actual or constructive notice of the presence of the offending substance must be proven before the proprietor can be held responsible for the injury.'"
Dolgencorp, Inc. v. Hall, 890 So.2d 98, 101 (Ala.2003)(quoting Cash v. Winn-Dixie Montgomery, Inc., 418 So.2d 874, 876 (Ala. 1982)). "`The entire basis of [a store owner's] liability rests upon [its] superior knowledge of the danger which causes the [customer's] injuries. Therefore, if that superior knowledge is lacking, as when the danger is obvious, the [store owner] cannot *433 be held liable.'" Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala.2002)(quoting Quillen v. Quillen, 388 So.2d 985, 989 (Ala.1980)). In order for Fowler to recover, she must prove that her "fall resulted from a defect or instrumentality on the premises; that the defect was the result of the defendant's negligence; and that the defendant had or should have had notice of the defect before the time of the accident." Hale v. Sequoyah Caverns & Campgrounds, Inc., 612 So.2d 1162, 1164 (Ala.1992).
Fowler cites Harley v. Bruno's Supermarkets, Inc., 888 So.2d 525 (Ala.Civ.App.2004); Howard v. Andy's Store for Men, 757 So.2d 1208 (Ala.Civ.App.2000); and Denmark v. Mercantile Stores Co., supra, as cases that support the reversal of the trial court's judgment in this case. However, those cases are distinguishable from the instant case.
In Harley, a patron of a grocery store tripped over a curb that was painted yellow in the grocery-store parking lot. At the time she tripped, it was 6 p.m. and the parking lot was only illuminated by the light from the inside of the grocery store. Unlike the patron in Harley, Fowler's path towards the steps and down the steps of the restaurant was well illuminated because she left the restaurant during the day.
In Denmark, a patron of a retail-clothing store tripped over a roll of garment bags that were normally located on a poll beside a checkout counter. The undisputed evidence in that case indicated that the garment bags were under the control of the defendant's employees and that those bags had been placed in the wrong location. The facts of this case, unlike the facts in Denmark, do not indicate that CEC or its employees created the dangerous condition.
In Howard, a patron tripped and fell over a raised concrete porch, or sidewalk, in front of the defendant's store. The concrete porch, or sidewalk, was one to two inches higher than the surface of the adjoining parking lot. In opposition to the defendants' summary-judgment motion, the plaintiff in Howard presented expert testimony indicating that changes in elevation greater than one-half inch presented tripping hazards. In the case at bar, unlike the plaintiff in Howard, Fowler offered no expert testimony regarding the potential hazard posed by the crack in the step. Fowler also failed to produce any evidence regarding the size of the crack in the step.
The record in this case, viewed in a light most favorable to Fowler, reveals that Fowler "caught" her foot on a "dent" in a step while leaving the restaurant. At the time Fowler left the restaurant, it was still daylight outside. Fowler attributed her fall solely to the "dent" in the step; there was no loose debris on the step. Fowler testified that she noticed the "dent" after she fell but that the "dent" appeared to be smooth. Fowler testified that she did not know how big the "dent" was in the step. During her deposition testimony, Fowler attempted to identify the "dent" on black and white photocopies of photographs taken by Fowler's counsel. Copies of the photocopies are contained in the record; however, we are unable to identify the "dent" to which Fowler refers to from the photocopies provided in the record on appeal.[2]
*434 Green testified that there was a crack in the step that had been there for at least 13 years. Green painted the step twice over the course of her employment at the restaurant. During that time, no other patrons of the restaurant had fallen on the step. Green had no knowledge that the step created a hazard to restaurant patrons. According to Green and Richey, the crack in the step did not present a tripping hazard.
The only evidence presented by Fowler to support her contention that a defect existed on the premises of the restaurant was her own testimony that she saw a "dent" in the step after she fell. A storekeeper is only responsible for maintaining its premises in a reasonably safe condition. See Dolgencorp, Inc. v. Hall, supra. The evidence presented by Fowler and CEC does not indicate that CEC failed to provide a reasonably safe premises. Given the record before us, we cannot say that Fowler presented substantial evidence that her fall resulted from a defect or instrumentality on CEC's premises that was the result of CEC's negligence and of which CEC had or should have had notice. See Hale v. Sequoyah Caverns & Campgrounds, supra. Therefore, the summary judgment in favor of CEC is due to be affirmed.
We now turn to the trial court's entry of a summary judgment in favor of FSR. Alabama caselaw provides that a landlord will be held liable to third persons or strangers injured on the leased premises by a defect that existed at the time of the lease. Allen v. Stephens, 875 So.2d 1207, 1211 (Ala.Civ.App.2003)(citing Cohran v. Boothby Realty Co., 379 So.2d 561, 563-64 (Ala.1980)). In this case, the undisputed evidence indicates that the steps on which Fowler fell were not in place at the time CEC and FSR entered into the lease agreement in 1982. According to the undisputed testimony proffered by Richey, the entranceway that included the steps was designed and constructed by CEC. Therefore, any alleged defect in the steps did not exist at the time of the lease and the trial court's summary judgment in favor of FSR is due to be affirmed.
AFFIRMED.
PITTMAN and BRYAN, JJ., concur.
CRAWLEY, P.J., and MURDOCK, J., concur in part and dissent in part, with writings.
CRAWLEY, Presiding Judge, concurring in part and dissenting in part.
I concur in affirming the summary judgment in favor of FSR because Fowler failed to present substantial evidence, in opposition to FSR's motion for a summary judgment, indicating that FSR had any obligation to maintain or repair the exterior entrances to the building. I dissent, however, from the affirmance of the summary judgment in favor of CEC.
CEC's argument that the condition that caused Fowler's fall was open and obvious is an affirmative defense, on which CEC bears the ultimate burden of proof. Denmark v. Mercantile Stores Co., 844 So.2d 1189, 1194 (Ala.2002). "`"[Q]uestions of openness and obviousness of a defect or danger and of [an invitee's] knowledge are generally not to be resolved on a motion for summary judgment.'" Harding v. Pierce Hardy Real Estate, 628 So.2d 461, 463 (Ala.1993) (quoting Harvell v. Johnson, 598 So.2d 881, 883 (Ala.1992))." Harley v. Bruno's Supermarkets, Inc., 888 *435 So.2d 525, 526-27 (Ala.Civ.App.2004). This rule is particularly applicable when, as in the present case, the defendant has taken steps to make what might otherwise be an open and obvious condition on the premises less apparent to an invitee. Cf. Howard v. Andy's Store for Men, 757 So.2d 1208 (Ala.Civ.App.2000) (change in elevation between the parking lot and the concrete pad that formed the sidewalk fronting the store was concealed by the fact that the lip of the concrete pad had been splashed by black asphalt, causing the change in elevation to be difficult to perceive).
Joann Green, the former general manager of the Chuck E. Cheese's restaurant, testified that, in the 13 years she was with CEC, the concrete began to break up near the place where the step abutted the curb. Green said that she had repainted the step and the curb twice for "cosmetic reasons." When she repainted the area, she first swept broken concrete and other debris out of the crack between the step and the curb and then she allowed paint to seep into the crack. Green testified in deposition:
"Q. [By counsel for CEC:] Okay. So you started at [the] Roebuck [Chuck E. Cheese's restaurant] in the late '80's?
"A. Yes.
"Q. And, at that time, was the step the same, the same as it was in the pictures [counsel for Fowler] was showing you?
"A. Well, like I say, in years to come it might not have looked like that when I first started working there, but in years to come, it deteriorated down the line.
"Q. The crack became visible?
"A. Yes.
"Q. And you would paint over it?
"A. Yeah."
The main opinion distinguishes this case from Howard v. Andy's Store for Men, supra, and other slip-and-fall cases, on the basis that "Fowler offered no expert testimony regarding the potential hazard posed by the crack in the step." 921 So.2d at 433. Although it is true that the plaintiffs in many of our premises-liability cases have submitted expert testimony indicating that the claimed defects in the premises were tripping hazards, we have never held that a plaintiff is required to present expert testimony on that issue. In my judgment, the main opinion has imposed on a slip-and-fall plaintiff the more stringent burden that a plaintiff in a design-defect product-liability case must meet. Compare General Motors Corp. v. Jernigan, 883 So.2d 646, 662 (Ala.2003)(stating that "[i]n an [Alabama Extended Manufacturer's Liability Doctrine] case, the plaintiff has the burden of proving a design defect," a burden which, more often than not, will necessitate expert testimony).
I believe that Fowler presented substantial evidence indicating that there was a genuine issue of material fact with respect to whether there was a defect in the premises and, if so, whether that defect was open and obvious; therefore, I would reverse the summary judgment in favor of CEC.
MURDOCK, Judge, concurring in part and dissenting in part.
I concur in affirming the summary judgment in favor of FSR. I dissent, however, from the affirmance of the summary judgment in favor of CEC.
NOTES
[1] Counsel for Fowler described the defect in the step as a "crack" and "crevice" when questioning Green during her deposition.
[2] It appears from the transcript of Green's deposition testimony that counsel for Fowler produced original photographs during the deposition. However, Fowler supported her response to the summary-judgment motions with black and white copies of the original photographs produced as exhibits at the deposition. This court sought to obtain the original photographs from the circuit clerk's office but that office stated that the original photographs were not contained in the clerk's file.